Exhibit A

# Exhibit A



<div align="right">

**CT Corporation**
**Service of Process Notification**
02/24/2023
CT Log Number 543291188

</div>

## Service of Process Transmittal Summary

**TO:**     LEGAL DEPARTMENT - SOP
TESLA, INC.
901 PAGE AVE
FREMONT, CA 94538-7341

**RE:**     **Process Served in Massachusetts**

**FOR:**    Tesla, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: Benjamen Simon // To: Tesla, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Complaint and Demand |
| **COURT/AGENCY:** | Essex County Superior Court - Lawrence, MA<br>Case # 2377CV00045D |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 09/21/2021 |
| **PROCESS SERVED ON:** | C T Corporation System, Boston, MA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/24/2023 at 12:31 |
| **JURISDICTION SERVED:** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | Kathleen A. Davidson<br>PASTORI I KRANS, PLLC<br>82 N Main St Suite B<br>Concord, NH 03301<br>603-369-4769 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/24/2023, Expected Purge Date: 03/01/2023<br><br>Image SOP<br><br>Email Notification,  LEGAL DEPARTMENT - SOP  legalsop@tesla.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>155 Federal Street<br>Suite 700<br>Boston, MA 02110<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the



**CT Corporation**
**Service of Process Notification**
02/24/2023
CT Log Number 543291188

included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

| **Summons** | CIVIL DOCKET NO.<br>2377CV00045-D | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>Benjamen Simon<br><center>Plaintiff(s)</center><br><center>vs.</center><br>Tesla, Inc.<br><center>Defendant(s)</center> | Thomas H. Driscoll, Jr.    Clerk of Courts<br>Essex    County<br>COURT NAME & ADDRESS:<br><br>**Essex County Superior Court**<br><br>**43 Appleton Way**<br>**Lawrence, MA 01840** |
|---|---|

THIS SUMMONS IS DIRECTED TO _____Tesla, Inc._____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the **Essex County Superior** Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court <u>and</u> mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business, Essex County Superior Court 43 Appleton Way Lawrence, MA 01840        (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

    b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:

    Kathleen Davidson, Esq., 82 N Main St Suite B  Concord, New Hampshire 03301

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

2-24-23

**3. (cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure**. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon.  Heidi E. Brieger _____ , Chief Justice on _____ January 31st , 20 23 . (Seal)

Clerk          Thomas H. Driscoll, Jr.

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

### PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date: _____

rev. 1/2023

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts 2 |
|---|---|---|
| | | The Superior Court |
| | | COUNTY |

| Plaintiff | Benjamen Simon | Defendant: Tesla, Inc. |
|---|---|---|
| ADDRESS: 1403 Crane Brook Way | | ADDRESS: 1 Tesla Road |
| Peabody, Massachusetts 01960 | | Austin, Texas 78725 |

1/12/2023

| Plaintiff Attorney: Kathleen A. Davidson | Defendant Attorney: |
|---|---|
| ADDRESS: 82 N. Main Street Suite B | ADDRESS: |
| Concord, NH 03301 | |

**RECEIVED**

| BBO: 675488 | BBO: |
|---|---|

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B99 | Other Torts | F | [X] YES   [ ] NO |

*If "Other" please describe:   Wrongful Termination

Is there a claim under G.L. c. 93A?                Is there a class action under Mass. R. Civ. P. 23?
[ ] YES   [X] NO                                  [ ] YES   [X] NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date

   1. Total hospital expenses                                   _____

   2. Total doctor expenses                                     _____

   3. Total chiropractic expenses                           _____

   4. Total physical therapy expenses                   _____

   5. Total other expenses (describe below)            _____

| | Subtotal (1-5): | **$0.00** |
|---|---|---|

B. Documented lost wages and compensation to date   *Estimate based on available information*   $50,000 straight wage

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses   *Lost health insurance benefit (ongoing)*   $50,000 approximate

E. Reasonably anticipated lost wages  *$90,000 worth of future stock options per year.  Value based on market.*  Market

F. Other documented items of damages (describe below)   $2.5 Mil - $10 Mil (Market)

At termination, lost 7,639 RSUs, stock split 3:1 8/22 meaning 22,917 shares & 617 stock options, with split 1851

| | TOTAL (A-F): **$2.7 Million - $11 Million** |
|---|---|

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Wrongful Termination causing lost wages, lost benefits, lost stock options, lost RSUs, emotional distress

**CONTRACT CLAIMS**

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Kathleen A. Davidson  BBO: 675488 | Date: 1/12/23 |
|---|---|

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Kathleen A. Davidson BBO: 675488 | Date: 1/12/2023 |
|---|---|

Date Filed 1/12/2023 5:18 PM
Superior Court - Essex
Docket Number

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (A) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Summary Process (Real Property)**

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (X) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (X) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (X) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS                                    SUPERIOR COURT

CIVIL ACTION NO. _____

| | |
|---|---|
| Benjamen Simon, | 1/12/2023 |
| Plaintiff | |
| v. | |
| Tesla, Inc., | **RECEIVED** |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff Benjamen Simon, by and through his undersigned counsel, Pastori | Krans, PLLC, and files this complaint against Defendant Tesla, Inc. ("Tesla" or "Defendant") for wrongful termination of employment. Tesla wrongfully terminated Simon after he complained, multiple times, of unsafe and harmful workplace conditions, and demanded that Tesla remedy the same, as they were legally required to do.

## THE PARTIES

1.     Plaintiff, Benjamen Simon ("Simon"), is an individual residing in Essex County at 1403 Crane Brook Way, Peabody, Massachusetts 01960.

2.      Defendant, Tesla, Inc. ("Tesla"), is a Delaware corporation with a principal place of business at 1 Tesla Road, Austin, Texas 78725. Tesla's registered agent is CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

3.      Simon's primary worksite address at Tesla was 210 Andover Street, Peabody, Massachusetts 01960.

<u>JURISDICTION AND VENUE</u>

4.      Jurisdiction is proper in the Superior Court as the amount claimed is within the jurisdictional limits of this court. G.L. c. 212 § 3.

5.      This Court has personal jurisdiction over Tesla as it conducted business in the Commonwealth of Massachusetts.

6.      Venue is proper in Essex County as Simon is a resident of Essex County and was at all time relevant to this Complaint. Simon also worked for Tesla within Essex County.

<u>STATEMENT OF FACTS</u>

7.      Simon began working for Tesla on September 30, 2019, as a Service Manager.

8.      In Simon's role as a Service Manager, he was responsible for ensuring that vehicles were serviced at Tesla's Peabody, Massachusetts location.

9.      Simon worked diligently without incident, and, as a result, he worked his way up. On or about December 18, 2020, Simon was promoted to the position of Regional Service Manager.

10.     In Simon's new position, he was responsible for ensuring that customer and client automobiles were serviced correctly and in a timely fashion for eight different Tesla locations.

11.     During the summer of 2021, there was a heat wave in Boston.

12.     During the heat wave, and during a weekly 1-on-1 meeting, Simon reported to his then manager, Jeffrey Gulley, that the lack of air conditioning at the Tesla shops was causing unsafe working conditions because of the heat and oppressive temperatures.  Mr. Gulley responded that he recognized how difficult it was to work in the heat and stated that the team in the Southeast got a lot of heat too.  Thus, Mr. Gulley brushed off the issue as though it was a part of the job.

13.     During this same time, Simon also reported the hot and unsafe working conditions to his Human Resources partner, Laura Cashman.  He informed her that the heat was reaching dangerous temperatures, especially in the shops.  Ms. Cashman responded by suggesting that the team take regular breaks and stay hydrated.  She did not offer any solutions for decreasing the temperatures in the workspace.  Further, her suggestion was problematic due to the fact that Tesla frowns upon employees taking more than the legally required break time.

14.     Between the initial report by Simon and the next heat wave, Simon's manager changed to Zachary Sullivan, who was new to working in the service department.

15.     During Mr. Sullivan's first few weeks, he asked Simon what challenges the services department was facing.  At that time, Simon told him that the heat in

the shops reached unbearable temperatures, and that he was concerned members of his team would leave to work in a safer environment.

16.     On August 16, 2021 and after another heat wave in Boston, there was a regional meeting lead by Mr. Sullivan.   In attendance at the meeting were Ms. Cashman, Matthew Vargas, Stephen Martinique, Robert Landgraff, and Andjela Zografakis.

17.     During the meeting, those in attendance discussed how they could improve the work environment for service team employees so that they could perform at a more efficient level.  At that point, Simon, yet again, raised the issue of the unsafe working conditions at Tesla due to the heat.  Simon used the meeting to ensure the concerns of his team were heard, and he demanded that the shops be permitted to submit requests for air conditioning to be installed.

18.     Mr. Sullivan initially responded to Simon's air conditioning demand with hesitation, but then stated that Simon should have someone in the shop submit a request.

19.     Immediately after the meeting, Simon reached out to Shawn Cook and told him he could submit the request for air conditioning in the shop from the Peabody, Massachusetts location.  Simon himself was unable to submit the request because he lost direct access to the system when he became a Regional Manager.

20.     On or about August 17, 2021, Mr. Cook submitted the request for air conditioning in the shop.

21.     The very next day, Simon received an email from Ryan Coloumbe, Facilities Manager, asking if he knew about Mr. Cook's request.

22.     Mr. Coloumbe told Simon that it would cost well over $100,000 for just one location to get air conditioning, and that the finance department would not approve the request.

23.     In response, Simon insisted that Tesla look into the possibility of air conditioning for the teams.  He received no response from management.

24.     Later that week or the following week, during his next follow-up meeting with Mr. Sullivan, Simon asked about Mr. Coloumbe's response email regarding the air conditioning.  Mr. Sullivan told Simon he had a conversation with Mr. Coloumbe and that he would follow-up; however, Mr. Sullivan's tone did not sound positive.

25.     After that meeting, each time Simon asked Mr. Sullivan about the request, Mr. Sullivan said that he would follow-up.

26.     Upon information and belief, Tesla took no further actions regarding Mr. Cook's request.  The dangerous heat situation did not improve.

27.     Frustrated with the lack of action by management to improve Tesla employees' unsafe working conditions, Simon used Microsoft Teams (messaging application) to communicate with Tesla's Environmental, Health and Safety Representative, Hannah Glaven, about the heat safety concerns.

28.     In addition, Simon requested that one of the location level Environmental, Health and Safety representatives, Alicen Ioken, look into heat concerns and regulations put forth by the Occupational Safety and Health

Administration ("OSHA").  Simon intended to use this information to prove to Tesla management that they were not complying with the law and that they had a legal obligation to remedy the unsafe conditions.

29.     After he raised concerns at the August 16, 2021 meeting, Simon's employment at Tesla was adversely impacted.

30.     Shortly after the regional meeting on August 16, 2021, Mr. Sullivan shifted Simon's regional responsibilities from eight (8) locations to five (5) locations in a "realignment" of service and sales locations.  Some members of the leadership team were assigned more locations while Simon was assigned less.

31.     Further, Simon's relationship with Ms. Cashman and Mr. Sullivan changed.  For example, Ms. Cashman was previously personable and had even bought a present for Simon's children that she found at a local thrift shop.  After the meeting, she turned very cold and direct towards Simon, so much so that other employees who worked for him noticed and commented to him about it.

32.     Mr. Sullivan previously used Simon's expertise to learn about the service side of the business and expressed interest in his opinions.  After the meeting, Mr. Sullivan stopped talking to Simon about things he was learning, and he stopped asking for Simon's opinions.

33.     On September 10, 2021, Simon had an incident while driving the Tesla service truck, the Ford F-250.  During the incident, Simon was stopped in traffic on the highway.  When traffic began to move again, Simon started moving forward but

the car in front of him did not.  Simon slightly tapped the car in front of him.  There was no mark on either vehicle, and no one was injured or could have been injured.

34.     On September 17, 2021, Simon received a phone call from Ms. Cashman asking if he was okay because she had learned about the September 10th incident.  In response to her questioning, Simon went over the incident with her and assured her that it was minor with no injuries or damage.  Ms. Cashman asked why Simon waited more than twenty-four (24) hours to report the accident.  Simon responded that he simply forgot because the incident was so minor that he did not even consider it an accident.  Ms. Cashman informed Simon that the Tesla policy is that all such reports are to be submitted within twenty-four (24) hours.

35.     During that phone call, Ms. Cashman also asked Simon why he was driving the Ford F-250, to which Simon responded that he used it for parts movement and regional travel, as he had routinely done in the past.  Ms. Cashman then asked Simon if he had written permission to drive the truck.  To Simon's knowledge written permission had never been required and employees used the trucks every day at the service location for such tasks.  Ms. Cashman requested Simon get permission from his manager, Mr. Sullivan, and to not drive the vehicle until he received permission.

36.     Although Tesla employees needed written permission to drive any Tesla inventory vehicles, upon information and belief, there was not a policy to request written permission to use the Ford F-250s, the Ford Transit, or the Tesla Service Model S.  Notably, Tesla employees take these vehicles home at night to save drive

time and money for the company, allowing the employees to be more productive, which Tesla encourages.

37.     Following the call with Ms. Cashman, Simon emailed Mr. Sullivan about Ms. Cashman's request for Simon to receive written permission before driving the Ford F-250.  Mr. Sullivan almost immediately called Simon back to ask about the email.  Simon then explained to Mr. Sullivan about his conversation with Ms. Cashman, and Mr. Sullivan did not have anything to say about it.  He did not say that Simon violated a policy or that he should have previously requested permission.

38.     After the call between Simon and Mr. Sullivan, Mr. Sullivan pushed back multiple meetings with Simon and cancelled their one-on-one scheduled for the next week.

39.     On Tuesday, September 21, 2021, Simon had his regular one-on-one meeting with Ms. Cashman where they discussed HR events in his region.  At the end of the meeting, Ms. Cashman told Simon that his use of the company truck, the Ford F-250, was outside of the company policy.  She then asked him to confirm he was no longer driving the truck.

40.     That same day, at the end of the workday, Mr. Sullivan called Simon and said that he had Ms. Cashman from Human Resources on the line.  He told Simon that he violated company policy and that his employment was terminated, effective immediately.

41.    Simon asked what policy he allegedly violated, but Mr. Sullivan would not respond.  Also, Simon's letter of termination did not provide an explanation as to what policy Simon allegedly violated.

42.    Simon has since learned that Tesla believes he violated Tesla policy in (1) driving a work truck and (2) reporting an accident with the work truck more than forty-eight hours later.

43.    These reasons are pretextual and retaliatory.

44.    First, Simon maintains that he was not acting outside of company policy and that it was no secret at Tesla that he operated the work truck to do his job. Management employees knew Simon drove the truck and never told him that he was in violation of a policy or should stop doing so, until after Simon complained about unsafe working conditions.

45.    Further, employees who blatantly violated the company vehicle use policies, including employees that drove Tesla inventory cars, only received written warnings.

46.    Further, many actual accidents, not bumped fenders without damage or injury, occurred at Tesla and many such accidents were reported later than company policy dictates.  Those employees were not terminated.

47.    Upon information and belief, Tesla will only be able to identify five other individuals under Ms. Cashman's supervision who were allegedly disciplined for vehicle use violations, none in Mr. Simon's territory.  Of those five, all are distinguishable from Mr. Simon's case: two resigned before their investigations were

9

even complete; two in Canada were allowing team members to use vehicles in an unauthorized manner; one was also installing cameras inappropriately; and the last was using a vehicle at lunch, not for business purposes, when she was in an accident.

48.     It is clear that Simon's protected activity, speaking out against Tesla's harmful conditions and trying to effectuate change, caused management to view him as a problem.

49.     Instead of working with Simon to improve the conditions of its shops to create a safe environment for its employees, Tesla chose to ignore issues and manufacture a reason to terminate Simon's employment.

50.     Tesla's wrongful termination of Simon's employment has derailed his career, caused him emotional distress, and has negatively impacted all aspects of his life, including financially.

## COUNT I

### (Wrongful Termination)

51.     Simon hereby repeats and incorporates his allegations set forth in the preceding paragraphs herein.

52.     Simon continuously reported concerns over the lack of air conditioning and extreme heat conditions in the Tesla shops, which created an unsafe work environment.

53.     Tesla disregarded Simon's safety complaints.

54.     Tesla terminated Simon's employment in retaliation for him reporting safety issues and demanding they be fixed.

10

55.     Tesla's termination of Simon violated public policy.

56.     As a result of Tesla wrongfully terminating Simon, he has suffered, and will continue to suffer damages.

<u>JURY DEMAND</u>

Plaintiff demands a jury trial on all issues so triable.

WHEREFORE, Plaintiff, Benjamen Simon, respectfully request that this Court:

A.     Award him damages including but not limited to lost wages, lost benefits, lost stock options and emotional distress;

B.     Award attorneys' fees and costs; and

C.     Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

BENJAMEN SIMON

By his attorneys,

PASTORI | KRANS, PLLC

Dated: January 12, 2023                  */s/ Kathleen A. Davidson*
Kathleen A. Davidson (BBO #675488)
PASTORI | KRANS, PLLC
82 North Main Street, Suite B
Concord, NH 03301
(603) 369-4769
kdavidson@pastorikrans.com

4882-2458-2727, v. 1